UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

IZELL RICHARDSON, JR.                                    CIVIL ACTION

VERSUS                                                   22-265-SDD-SDJ

THE CITY OF PORT ALLEN, ET AL.

### RULING

This matter is before the Court on the Motion for Summary Judgment[1] filed by Defendants, the City of Port Allen, Louisiana (the "City"), Corey Hicks ("Chief Hicks"), in his official capacity as chief of police for the City, and Nolen Dehon, III ("Officer Dehon"), in his official capacity as a former officer for the City (collectively, "Defendants").  Plaintiff Izell Richardson, Jr. ("Richardson") filed an Opposition,[2] and Defendants replied.[3]

### I.     FACTUAL BACKGROUND

Richardson filed suit in the Eighteenth Judicial District Court for the State of Louisiana, Parish of West Baton Rouge against Defendants.[4]  Plaintiffs named the City, Officer Dehon in his individual and official capacities, Chief Hicks in his official capacity, and the Port Allen Police Department ("PAPD").[5]

---

[1] Rec. Doc. 21.
[2] Rec. Doc. 22.
[3] Rec. Doc. 23.
[4] Rec. Doc. 1-2.
[5] *Id.* at pp. 1-2.

Richardson alleges that on March 27, 2021, Port Allen police were called to the residence he occupied for an alleged disturbance.[6] He claims two PAPD officers were dispatched to the residence.[7] Richardson alleges that Officer Dehon contacted Richardson upon arrival.[8] Officer Dehon was animated and aggressive, with his taser drawn and pointing at Richardson.[9] Richardson was handcuffed, escorted by a Port Allen Police Officer toward a marked PAPD sport utility vehicle, and instructed to get in the back.[10]

Richardson claims he told the officer he could not physically get into the PAPD vehicle due to a prior back injury and due to his height.[11] Officer Dehon then walked up to the vehicle and demanded Richardson be removed from the vehicle.[12] Sensing hostility, Richardson asked for help.[13] Officer Dehon pulled out his taser and told Richardson, "Scream again, go ahead, scream."[14] Richardson asked for help and Officer Dehon held the taser to Richardson's torso and activated the taser.[15] This was allegedly repeated again about ten seconds after the first tasing.[16]

Richardson alleges no other officers present intervened and he was then transported to the PAPD offices.[17] Richardson asserts he was handcuffed to a bench, while in distress due to being tased.[18] He claims an ambulance was called to PAPD,

---

[6] *Id.* at p. 2.
[7] *Id.*
[8] *Id.*
[9] *Id.* at p. 3.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.* at p. 4.
[18] *Id.*

where one of the paramedics found Richardson was experiencing an elevated heart rate.[19] As noted by the huge scar on his chest, Richardson suffered from previous heart-related issues that required medical intervention.[20] He was transported to a local hospital for treatment for his elevated heart rate and reported back pain.[21]

Richardson alleges he submitted a complaint to the PAPD on March 29, 2021, concerning Officer Dehon's actions.[22] Based on the information he received, the tasing incident and/or actions of Officer Dehon were never reported.[23] Richardson states body camera ("body cam") footage of the incident was reviewed by the officers' superiors at the PAPD, who opened an investigation into the incident.[24]

Richardson asserts § 1983 claims against Officer Dehon, in his individual and official capacities, for unreasonable seizure and excessive force in violation of his Fourth and Fourteenth Amendment rights.[25] Richardson asserts § 1983 claims against the City, PAPD, and Chief Hicks, as the final decisionmaker and policymaker and in his official capacity, under *Monell*.[26] Richardson alleges the City and PAPD failed to have a written policy on the use of force with respect to tasers against person who were handcuffed and did not pose any threat.[27] Richardson also asserts § 1983 claims against Chief Hicks, in his official capacity, the PAPD, and the City for negligent hiring, failure to properly train and supervise, and failure to promulgate a constitutional use of force policy.[28]

---

[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id*
[25] *Id.* at pp. 12-13.
[26] *Id.* at p. 7.
[27] *Id.*
[28] *Id.* at p. 13.

Richardson also brings state law claims against Defendants under Article 1 Section 2 and Section 5 of the Louisiana Constitution of 1974, and under La. Civ. Code arts. 2315, 2316, 2317, and 2320.[29]

Defendants removed.[30] Defendants now seek summary judgment as to Richardson's *Monell* claims against the City, Chief Hicks in his official capacity, and Officer Dehon in his official capacity.[31] In support, Defendants submit the Affidavit of Chief Hicks,[32] with attachments, and the Affidavit of Kerry J. Najolia ("Najolia"),[33] with attachments. Richardson opposes.[34] However, Richardson seemingly concedes to dismissal of the *Monell* claims, but opposes dismissal of his remaining claims.[35] In support, Richardson submits his personal Affidavit,[36] Chief Hicks' Affidavit,[37] Najolia's Affidavit,[38] and the Deposition of Chief Hicks.[39] Defendants reply.[40]

## II.   LAW AND ANALYSIS

### A.  Summary Judgment Standard

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41] The party moving for summary judgment is initially responsible for

---

[29] *Id.* at p. 5, p. 11, p. 18.
[30] Rec. Doc. 1.
[31] Rec. Doc. 21.
[32] Rec. Doc. 21-1.
[33] Rec. Doc. 21-2.
[34] Rec. Doc. 22.
[35] *Id.* at p. 5. Here, because Defendants seek summary judgment only as to Richardson's *Monell* claims, the Court need not address Richardson's remaining claims, or the evidence submitted by Richardson in support of those remaining claims.
[36] Rec. Doc. 22-2.
[37] Rec. Docs. 21-1, 22-4.
[38] Rec. Doc. 21-2.
[39] Rec. Doc. 22-4.
[40] Rec. Doc. 23.
[41] Fed. R. Civ. P. 56.

identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact.[42] A court must deny the motion for summary judgment if the movant fails to meet this burden.[43]

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[44] This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim.[45] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[46]

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment.[47] The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.[48] Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party.[49]

### B. Defendants are entitled to summary judgment as to Richardson's *Monell* claims.

Defendants seek dismissal of Richardson's *Monell* claims against them.[50] Richardson misreads the motion as a complete dismissal of all claims.[51] However,

---

[42] *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).
[43] *Id.*
[44] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted).
[45] *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990) (citing *In re Mun. Bond Rep. Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982)).
[46] *Anderson*, 477 U.S. at 249 (citations omitted).
[47] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).
[48] *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).
[49] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).
[50] Rec. Doc. 21 at p. 4.
[51] Rec. Doc. 22 at p. 5.

Richardson does not refute the record evidence submitted by Defendants in support and he admits the undisputed facts allow for dismissal of *Monell* claims for failure to train, supervise, and disciplipne.[52]

*Monell* requires a showing that the "violation resulted from a custom or policy maintained by the municipality with objective deliberate indifference."[53] A municipality may be subject to liability under § 1983 when the municipality maintains an unconstitutional policy or custom.[54] To state a claim against a municipal defendant for an alleged unconstitutional policy or practice, the plaintiff must allege that (1) an official policy (2) promulgated by a policymaker (3) was the moving force behind the violation of a constitutional right.[55]

An "official policy or custom" giving rise to *Monell* liability may be "a persistent, widespread practice which, although not officially promulgated, is so common and well settled as to constitute a custom that fairly represents municipal policy."[56] However, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[57] To plausibly plead "a practice 'so persistent and widespread as to practically have the force of law,' . . . a plaintiff must do more than describe the incident

---

[52] *Id.*
[53] *Duvall v. Dallas Cty.*, 631 F.3d 203, 210 (5th Cir. 2011).
[54] *Valle v. City of Houston*, 613 F.3d 536, 541-542 (5th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).
[55] *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017) (citations omitted).
[56] *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997) (quotation omitted).
[57] *Pudas v. St. Tammany Par.*, No. 18-10052, 2019 WL 2410939, at *3 (E.D. La. June 7, 2019) (quoting *Colle v. Brazos Cty.*, 981 F.2d 237, 245 (5th Cir. 1993)).

that gave rise to his injury."[58] Critically, in the absence of an underlying constitutional violation, there can be no municipal liability under *Monell*.[59]

A suit against a government official in his official capacity is the equivalent of filing suit against the government agency of which the official is an agent.[60] When the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them.[61] Thus, summary judgment is appropriate as to the official capacity claims against Chief Hicks and Officer Dehon.[62]

Richardson alleges claims against the City for failing to have a written policy on the use of force with respect to tasers.[63] Richardson also asserts claims against the City for negligent hiring, failure to properly train and supervise, and failure to promulgate a constitutional use of force policy.[64]

---

[58] *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).
[59] *See Albert v. City of Petal*, 819 F. App'x 200, 203 (5th Cir. 2020) (noting that because there was no constitutional violation, there can be no *Monell* claims); *Brown v. Wilkinson Cnty. Sheriff Dep't*, 742 F. App'x 883, 884 (5th Cir. 2018) (holding that because the plaintiff failed to demonstrate an underlying constitutional violation, the claims against the county and the officers in their official capacities failed); *Harris v. Serpas*, 745 F.3d 767, 774 (5th Cir. 2014) (upholding the district court's dismissal of the *Monell* claims because the plaintiffs had not shown there was a constitutional violation).
[60] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).
[61] *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *Flores v. Cameron Cty.*, 92 F.3d 258, 261 (5th Cir. 1996); *Broussard v. Lafayette City-Par. Consol. Gov't*, 45 F.Supp.3d 553, 573-576 (W.D. La. 2014); *Delouise v. Iberville Par. Sch. Bd.*, 8 F.Supp.3d 789, 807 (M.D. La. 2014).
[62] Along those same lines, Richardson's claims against PAPD are redundant of his claims against the City and are dismissed. *Wright v. City of Harahan*, 2020 WL 815240, at *4 (E.D. La. 2020). Further, Richardson does not assert an individual capacity claim against Chief Hicks, and Defendants do not seek dismissal of any individual capacity claims against Officer Dehon. Thus, the Court need not address those claims.
[63] Rec. Doc. 1-2 at p. 7.
[64] *Id.* at p. 13.

A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.[65]  Under Section 1983, an official is liable for failure to train and/or supervise if the plaintiff shows that (1) the official failed to train or supervise the officer, (2) "there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights;" and (3) this failure "constituted deliberate indifference to the plaintiff's constitutional rights."[66]

A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train.[67] Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability."[68]  Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.[69]

To establish a failure to discipline, a plaintiff must plead that: 1) the municipality failed to discipline its employees, 2) the failure to discipline amounted to deliberate

---

[65] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).
[66] *Coleman v. City of Port Allen Chief of Police*, 2013 WL 3777152, at *3 (M.D. La. July 17, 2013) (quoting *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir.2003) (quotations and citation omitted)).
[67] *Connick*, 563 U.S. at 62 (citing *Bd. of Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 409 (1997).
[68] *Id.*
[69] *Id.*

indifference, and 3) the failure to discipline directly caused the constitutional violations in question.[70]

Here, the following facts are established by record evidence.

Chief Hicks is the chief of the PAPD.[71] He was elected police chief in 2020 and assumed office in January 2021.[72] Chief Hicks's law enforcement background includes 20 years working as a Police Officers Standards and Training ("POST")-certified law enforcement officer for the West Baton Rouge Parish Sheriff's Office before being elected Port Allen police chief.[73] Chief Hicks was the Port Allen police chief on March 27, 2021, when the incident occurred at approximately 0243 hours at 1130 Avenue C, Port Allen, Louisiana.[74]

On March 27, 2021, Officer Dehon had been employed as a uniform patrol officer by PAPD since 2012.[75] Officer Dehon had been employed by the Pointe Coupee Parish Sheriff's Office from March 2009 through July 2012.[76] Officer Dehon attended and successfully completed the Post Capital Area Regional Training Academy ("CARTA") in Baton Rouge. Officer Dehon received his Louisiana POST certification on June 25, 2009.[77] Officer Dehon was POST-certified and met the standards required for employment as a patrol officer for PAPD and was hired in accordance with PAPD protocols.[78] Officer Dehon signed the PAPD Oath of Office on October 29, 2012, after

---

[70] *Kador o/b/o Willis v. Gautreaux*, 2024 WL 1261897, at *16 (M.D. La. Mar. 25, 2024).
[71] Rec. Docs. 21-3 at p. 1, 21-1 at p. 1, 22-1 at p. 1.
[72] *Id.*
[73] *Id.*
[74] Rec. Docs. 21-3 at p. 2, 21-1 at p. 1, 22-1 at p. 1.
[75] *Id.*
[76] Rec. Docs. 21-3 at p. 2, 21-1 at p. 1, 22-1 at p. 2.
[77] *Id.*
[78] Rec. Docs. 21-3 at p. 2, 21-1 at p. 2, 22-1 at p. 2.

successfully completing the hiring process.[79] Officer Dehon worked in the patrol division during his tenure with PAPD.[80]

The PAPD Policies and Procedures Manual contains 32 numbered sections and additional supplemental policies covering a variety of specified topics.[81] When hired, each PAPD officer is provided a copy of the PAPD Policies and Procedures Manual and is instructed to know and follow the PAPD's policies and procedures.[82] Sections of the PAPD Policies and Procedures Manual were updated in 2010 and 2015.[83]

On March 27, 2021, PAPD had written use of force and TASER polices that included use of force as it pertains to the use of the TASER.[84] Officer Dehon was TASER user certified on March 29, 2012. He was recertified with the TASER on March 11, 2021, sixteen (16) days before the arrest of Richardson.[85] POST requires that each peace officer complete the annual mandatory POST in-service training course to maintain their certification. Officer Dehon's training was current at the time of Richardson's arrest on March 27, 2021.[86]

During his tenure with PAPD, Officer Dehon was required to meet the POST annual in-service training mandates to maintain POST certification.[87] During his nine-year tenure with PAPD, Officer Dehon was the subject of five prior internal complaints which included receiving disciplinary action for the sustained complaints, none of which

---

[79] *Id.*
[80] Rec. Docs. 21-3 at p. 3, 21-1 at p. 2, 22-1 at p. 2.
[81] *Id.*
[82] *Id.*
[83] *Id.*
[84] *Id.*
[85] *Id.*
[86] Rec. Docs. 21-3 at p. 4, 21-1 at p. 2, 22-1 at p. 2.
[87] Rec. Docs. 21-3 at p. 4, 21-1 at p. 2, 22-1 at p. 3.

concerned the use of force. Additionally, Officer Dehon had no prior complaints involving the use of his department-issued TASER.[88] Officer Dehon was required to complete re-training regarding a sustained administrative complaint during his employment at PAPD. This complaint did not involve the use of his department-issued TASER.[89]

Ms. Tanya Green contacted PAPD and requested police to her location due to her brother, Richardson, breaking a window at his residence.[90] Officer Dehon, along with PAPD Officer Ravencraft, responded to a dispatched call for service at the residence of Richardson.[91] During that investigation, Officer Dehon arrested Richardson for disturbing the peace and resisting arrest.[92] Chief Hicks observed PAPD body cam video showing that during the arrest process, Officer Dehon tazed Richardson who was handcuffed in the rear of a PAPD marked police unit.[93] Richardson was transported to the PAPD station. At some point, Richardson was transported to Baton Rouge General Hospital ER by EMS.[94]

Richardson lodged a formal complaint with Chief Hicks regarding the interaction between him and Officer Dehon during his arrest process.[95] PAPD Captain Casey Williams ("Williams"), who was assigned to investigate internal affairs complaints involving PAPD personnel, reviewed the body cam video from the Richardson arrest.[96] After Williams consulted with Chief Hicks about that body cam video, Chief Hicks ordered

---

[88] *Id.*
[89] *Id.*
[90] Rec. Docs. 21-3 at p. 4, 21-1 at p. 3, 22-1 at p. 3.
[91] Rec. Docs. 21-3 at p. 5, 21-1 at p. 3, 22-1 at p. 3.
[92] *Id.*
[93] *Id.*
[94] *Id.*
[95] *Id.*
[96] *Id.*

that an internal investigation be conducted. Chief Hicks determined that the investigation would be conducted by another law enforcement agency. Chief Hicks forwarded the internal affairs information to West Baton Rouge Sheriff's Office ("West BRSO"). An administrative and a criminal investigation was then conducted by West BRSO.[97]

Chief Hicks informed Officer Dehon that an administrative internal investigation was being conducted regarding his interaction with and the arrest process regarding Richardson.[98] At that time, Chief Hicks placed Officer Dehon on administrative leave with pay, in accordance with PAPD policy.[99] Upon completion of the internal investigation, it was determined that the complaint was sustained against Officer Dehon. A hearing date regarding the complaint was provided to Officer Dehon.[100] Chief Hicks determined that Officer Dehon's termination would be recommended, based on the seriousness of the violation that Officer Dehon committed, to the Mayor and City Council members according to PAPD policy.[101] Officer Dehon voluntarily resigned his position with PAPD prior to that hearing.[102]

West BRSO investigators determined that Officer Dehon had committed a violation of state criminal law. The West Baton Rouge District Attorney's Office was consulted.[103] Officer Dehon was arrested for malfeasance in office and aggravated battery.[104] Officer Dehon entered a guilty plea and received a sentence of 16 months in state prison.[105]

---

[97] Rec. Docs. 21-3 at p. 6, 21-1 at p. 3, 22-1 at p. 3.
[98] Rec. Docs. 21-3 at p. 6, 21-1 at p. 3, 22-1 at p. 4.
[99] *Id.*
[100] *Id.*
[101] Rec. Docs. 21-3 at pp. 6-7, 21-1 at p. 3, 22-1 at p. 4.
[102] Rec. Docs. 21-3 at p. 7, 21-1 at p. 3, 22-1 at p. 4.
[103] Rec. Docs. 21-2 at p. 7, 21-1 at p. 4, 22-1 at p. 4.
[104] Rec. Docs. 21-2 at p. 6, 21-1 at p. 4, 22-1 at p. 4.
[105] Rec. Docs. 21-2 at p. 8, 21-1 at p. 4, 22-1 at p. 4.

Defendant's expert witness Najolia opined that the PAPD Policy and Procedures Manual is consistent with Louisiana POST requirements and with other Louisiana law enforcement agencies. Updates were made in 2010 and 2015.[106] The PAPD TASER Policy was consistent with TASER training and other TASER policies in other Louisiana agencies.[107] Officer Dehon was TASER user certified on March 29, 2012. Officer Dehon was recertified with the TASER on March 11, 2021. This certification was consistent with TASER certification requirements.[108] Officer Dehon was POST certified on June 25, 2009. POST requires that each officer show proficiency in all aspects of the mandated POST Basic training. Officer Dehon met the standards of POST and CARTA.[109] POST requires that each peace officer complete the annual mandatory POST in-service training courses to maintain their certification. Officer Dehon's training was current based on POST mandates at the time of this incident.[110] Officer Dehon met the standards required for employment as a patrol officer and was hired in accordance to PAPD protocols.[111] Officer Dehon was required to complete re-training regarding a sustained administrative complaint during his employment at PAPD.[112]

Najolia further opined that Officer Dehon made an unlawful arrest and used unauthorized force during the arrest in violation of POST training and PAPD policy and procedures.[113] Officer Dehon received discipline for departmental policy violations including suspension days, which is consistent with contemporary leadership training.

---

[106] Rec. Docs. 21-3 at p. 7, 22-1 at p. 4, 21-2 at p. 7.
[107] *Id.*
[108] Rec. Docs. 21-3 at p. 8, 22-1 at p. 5.
[109] Rec. Docs. 21-2 at p. 7, 22-1 at p. 5, 21-2 at p. 7.
[110] Rec. Docs. 21-2 at p. 8, 22-2 at p. 5, 21-3 at p. 8.
[111] Rec. Docs. 21-2 at p. 7, 21-3 at p. 8, 22-1 at p. 5.
[112] *Id.*
[113] Rec. Docs. 21-3 at p. 9, 22-1 at p. 5, 21-2 at p. 7.

There was no indication in the documents that Officer Dehon appealed any of the investigative findings and/or discipline received.[114] The PAPD Patrol Commander reviewed the body cam videos. Richardson met with Chief Hicks the next day. It was appropriate for the internal investigation to be conducted on Officer Dehon's interaction with Richardson.[115] The manner that the internal investigation and the criminal investigation were conducted by the West BRSO investigators and placing Officer Dehon on administrative leave in a timely manner was appropriate based on the totality of circumstances.[116] Once it was determined that the administrative allegations were sustained against Officer Dehon, it was appropriate to recommend discipline against Officer Dehon. Termination was an appropriate discipline based on Officer Dehon's actions.[117] According to PAPD protocol, it was appropriate to provide Officer Dehon a hearing.[118] Since Officer Dehon resigned from the agency and pleaded guilty to the criminal charges, it was appropriate for PAPD to alert Louisiana POST Council of Officer Dehon's guilty plea.[119]

The Court finds that the undisputed evidence demonstrates that there did, in fact, exist a policy with respect to the use of force and utilization of tasers. The undisputed evidence discussed hereinabove further demonstrates that Officer Dehon was properly hired, trained, supervised, and disciplined. Further, Defendant's expert witness Najolia opined that, at the time of the alleged use of force, Officer Dehon was POST certified, current in his POST training, and that he received TASER retraining just sixteen (16) days

---

[114] *Id.*
[115] *Id.*
[116] Rec. Docs. 21-3 at p. 9, 22-1 at p. 5, 21-2 at p. 8.
[117] Rec. Docs. 21-3 at pp. 9-10, 22-1 at p. 5, 21-2 at p. 8.
[118] Rec. Docs. 21-3 at p. 10, 22-1 at p. 5, 21-2 at p. 8.
[119] *Id.*

before the alleged incident. And Najolia opined that PAPD policies and procedures met Louisiana POST requirements, including the TASER policy. Richardson did not provide countervailing evidence that the City or PAPD's training was defective or insufficient. Nor did he show any defects in the training caused the constitutional deprivations alleged in the Complaint. Richardson offered no summary judgment evidence to refute the expert evidence presented by Defendants as to his *Monell* claims.

Thus, summary judgment is appropriate as to Richardson's *Monell* claims against the City, Chief Hicks in his official capacity, and Officer Duhon in his official capacity.

## III.   CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment[120] filed by Defendants is GRANTED and Richardson's *Monell* claims against them are dismissed with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>December 2, 2024</u>.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[120] Rec. Doc. 21.